**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ATLANTIC CORPORATION OF WILMINGTON, INC. d/b/a ATLANTIC CARIBBEAN PACKAGING, SRL,

Plaintiff,

v.

XPAC CORPORATION, et al.,

Defendants.

CIVIL NO.: 25-1567 (MEL)

## OPINION AND ORDER

### I. PROCEDURAL BACKGROUND

On October 22, 2025, plaintiff Atlantic Corporation of Wilmington, Inc. d/b/a Atlantic Caribbean Packaging, SRL, ("Atlantic") filed a complaint against defendants XPAC Corporation ("XPAC"), Rafael G. Vidal Portela ("Vidal"), and Sharon Díaz ("Díaz"). ECF No. 1. Atlantic seeks to recover money it loaned to XPAC under an agreement where Atlantic provided a $50,000 monthly line of credit to XPAC for the purchase of merchandise. Atlantic also seeks to recover tort damages. Vidal and Díaz filed an amended motion to dismiss the claims against them for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 16. Atlantic did not file a response in opposition. Accordingly, the motion to dismiss is hereby deemed unopposed. For the reasons set forth below, the motion to dismiss is GRANTED.

## II. SUMMARY OF ALLEGATIONS[1]

On November 25, 2024, Atlantic and XPAC entered into an agreement whereby Atlantic would extend a $50,000 monthly line of credit to XPAC to be used for ordering merchandise. ECF No. 1 at 2, ¶ 5. XPAC signed the agreement through Vidal, its president. *Id.* Vidal uses the same address for personal and business purposes. *Id.* at 2, ¶ 2. Díaz is Vidal's wife. *Id.* From November 29, 2024, to March 18, 2025, Atlantic sent thirteen invoices to XPAC for repayment of debt from its orders of goods. *Id.* at 3–4, ¶¶ 6–18. XPAC has only repaid the debt from one of these invoices. *Id.* at 4, ¶ 19. The remaining unpaid debt for the other goods is $138,622.88. *Id.* at 4, ¶ 20. Atlantic tried to resolve the dispute out of court, but was unable to do so. *Id.* at 5, ¶¶ 23–24.

## III. LEGAL STANDARD

A defendant may move to dismiss an action pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Hernández-Castrodad v. Steidel-Figueroa*, 181 F.4th 1, 10 (1st Cir. 2026) (quoting *Zhou v. Desktop Metal, Inc.*, 120 F.4th 278, 287 (1st Cir. 2024)); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 559 (2007). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

[1] This factual recitation is taken from Atlantic's allegations in the complaint, the content of which must be accepted as true at this stage of the proceedings to the extent that the allegations are not conclusory. *Kolackovsky v. Town of Rockport*, 165 F.4th 114, 119 (1st Cir. 2026) (quoting *Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020)).

Such a task requires a two-pronged analysis. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "Similarly, a court does not accept as true allegations that while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (internal quotations omitted). In short, to survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

"Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim of relief." *Air Sunshine, Inc.*, 663 F.3d at 33. In making this determination under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint and "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). In addition to the complaint, the court can also consider "documents attached to or fairly incorporated into the complaint, facts susceptible to judicial notice, and concessions in plaintiffs' response to the motion to dismiss." *Cheng v. Neumann*, 51 F.4th 438, 441 (1st Cir. 2022) (citation modified) (quoting *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 21 (1st Cir. 2018)). "Although evaluating the plausibility of a legal claim 'requires the reviewing court to draw on its judicial experience and common sense,' the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (first quoting *Iqbal*, 556 U.S. at 677; and then quoting *Twombly*, 550 U.S. at 556).

The court does not need to credit as properly pled factual allegations "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 25 (1st Cir. 2025) (quoting *Aulson*, 83 F.3d at 3). Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not warrant recovery. *Aulson*, 83. F3d at 3.

## IV. Analysis

### A. Collection of Outstanding Debt

#### 1. Vidal

Vidal argues that the complaint fails to state a claim against him for the following reasons: (1) the complaint alleges a corporate debt rather than a personal debt of Vidal; (2) Vidal is not liable for the debt by virtue of his position as president of XPAC; and (3) he is shielded by the corporate veil.

At the outset, the complaint does not allege that Atlantic entered into an agreement to extend credit to Vidal personally. It instead alleges that Atlantic sent thirteen invoices "to the address provided" from November 2024 to March 2025 "for goods ordered by XPAC." Although the complaint states that XPAC and Vidal use the same address for personal and business purposes, the use of the phrase "to the address provided" does not clearly indicate that the invoices were addressed to Vidal. Even "indulg[ing] all reasonable inferences in [Atlantic's] favor," *Doyle*, 103 F.3d at 190, and accepting that the invoice was sent to Vidal, that allegation alone does not establish that Vidal was personally liable for the debt. Without more allegations detailing Vidal's involvement in his personal capacity, it is equally likely that he received the invoices on behalf of XPAC.

There is also no allegation that Vidal had agreed to be personally liable on the contract or otherwise had entered into an agreement with Atlantic whereby it could seek recourse from him.

The complaint expressly recognizes that Vidal signed the agreement on behalf of XPAC "as its President." Puerto Rico law provides that "corporations are presumed to be legal entities separate from their officers, directors, and shareholders." *Situ v. O'Neill*, 124 F. Supp. 3d 34, 50 (D.P.R. 2015) (citing P.R. Laws Ann. tit. 14, § 3501 *et seq.*). "Thus, 'corporate directors, officers, and shareholders are generally not liable for the debts of the corporation.'" *Id.* (quoting *Colón v. Blades*, 757 F. Supp. 2d 107, 109 (D.P.R. 2010). Vidal, acting as XPAC's president, is presumed to not be personally bound by XPAC's agreement with Atlantic.

However, in some cases, "the corporate veil may be pierced and individual liability imposed upon the individuals for which the corporate entity served merely as an alter ego." *KetoneAid, Inc. v. Suspend Aging L.L.C.*, 2026 WL 2641677, at *8 (D.P.R. Sept. 8, 2026) (quoting *Nieto-Vicenty v. Valledor*, 22 F. Supp. 3d 153, 162 (D.P.R. 2014)). "The corporate veil may be pierced pursuant to Puerto Rico law where recognizing the corporate form would (1) sanction a fraud; (2) promote an injustice; (3) evade statutory obligations; (4) violate public policy; (5) result in inequity; or (6) cover up fraudulent or criminal activity." *Nieto-Vicenty*, 22 F. Supp. 3d at 162 (citing *Milan v. Centennial Commc'ns Corp.*, 500 F. Supp. 2d 14, 26 (D.P.R. 2007)). Courts also consider a number of federal common law factors to determine when veil-piercing is appropriate, including: "(1) undercapitalization; (2) nonpayment of dividends; (3) failure to observe corporate formalities; (4) absence of corporate records; (5) commingling of funds; and (6) use of corporate funds for non-corporate purposes." *Id.* (citing *Colón*, 757 F. Supp 2d at 109). The burden of proof is "heavy" and lies with the party asking the court to pierce the corporate veil. *KetoneAid, Inc.*, 2026 WL 2641677, at *8 (citing *Velázquez v. P.D.I. Enters., Inc.*, 141 F. Supp. 2d 189, 193 (D.P.R. 1999)).

Here, the complaint does not sufficiently allege facts that would make piercing the corporate veil appropriate. Far from alleging a severe enough abuse of the corporate form to warrant disregarding its protections, the complaint only alleges that Vidal and XPAC share the same address. Taking all reasonable inferences in favor of Atlantic, this fact at best shows only that XPAC failed to observe a corporate formality; it does not show that XPAC is an alter ego of Vidal. With no other allegations in the complaint that implicate any of the other factors, it is not plausible that the corporate veil would be pieced and leave Vidal personally liable for XPAC's alleged debt to Atlantic.

**2. Díaz**

Regarding Díaz, the complaint states that she is "believed to be [Vidal's] wife and, therefore, is included as a defendant because she may be liable for XPAC and or her husband's actions or omissions object of this complaint." This is the only statement that refers to Díaz in the complaint. It does not allege that she was involved in any way with Atlantic and XPAC's transactions, that she was involved in the corporate governance of XPAC, that she purchased goods from Atlantic, or otherwise personally entered into an agreement with Atlantic. Indeed, the complaint does not allege that Díaz has performed any actions at all. It only mentions that she is married to Vidal. Simply put, there is no vehicle within the complaint to cross the logical gap between Díaz and Vidal's marriage and Díaz's personal liability on the Atlantic-XPAC agreement.[2] The complaint does not plausibly state a claim for relief against Díaz for collection of debt.

[2] Even if there is a conjugal partnership between Vidal and Díaz, the court has already concluded that the claims against Vidal in his personal capacity cannot survive.

**B. Tort Claims**

Finally, Atlantic requests that the court awards it damages in the amount of $1,000,000 "for affecting plaintiff's business." ECF No. 1 at 5, ¶ 25. It then proceeds to state the elements of a tort action under Puerto Rico law. *Id.* at 6, ¶¶ 29–30. As an initial matter, it is unclear which defendant allegedly affected Atlantic's business. If this request is directed at Vidal and Díaz, the complaint does not state what act or omission by either Vidal or Díaz caused Atlantic harm. While corporate a corporate officer is always "liable for torts in which he personally participated," *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980), Atlantic has failed to plausibly allege that Vidal or Díaz personally participated in any wrongful conduct. As discussed above, the complaint alleged that Vidal signed the agreement in his official capacity as XPAC's president and did not allege any conduct on the part of Díaz. It is not the case that the allegations of tortious conduct are merely threadbare or speculative; the complaint is entirely devoid of allegations of tortious conduct. Thus, Atlantic failed to state a tort claim against Vidal and Díaz.

**V. CONCLUSION**

For the foregoing reasons, Atlantic has failed to state any claims against Vidal and Díaz upon which relief can be granted. Accordingly, the amended motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 16) is GRANTED. All claims against Vidal and Díaz are hereby DISMISSED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of November 2026.

s/Marcos E. López
U.S. Magistrate Judge